UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
ATARI, INC., ATARI INTERACTIVE, INC.  :
and HASBRO, INC.,                      :
                                       :        04 Civ. 3723 (JSR)
            Plaintiffs,                :
                                       :        MEMORANDUM ORDER
            -v-                        :
                                       :
GAMES, INC., ROGER W. ACH II, and      :
CHICAGO WEST PULLMAN LLC,              :
                                       :
            Defendants.                :
--------------------------------------- x

JED S. RAKOFF, U.S.D.J.

        By Order dated June 10, 2004, the Court entered a preliminary

injunction barring defendants from using defendants' trademarks,

artwork or source code during the pendency of this litigation.  See

Order, 6/10/04.  By Memorandum Order dated February 23, 2005, the

Court granted plaintiffs' motion to dismiss certain of defendants'

counterclaims.  See Memorandum Order, 2/23/05.  By Memorandum Order

dated March 11, 2005, the Court granted plaintiffs' motion for

summary judgment on their breach of contract claims, in the process

dismissing defendants' remaining counterclaims, but reserved a

determination on damages pending further briefing.  See Memorandum

Order, 3/11/05.  By Order dated April 4, 2005, the Court denied

defendants' motion for reconsideration of the previous orders and

dismissed plaintiffs' remaining claims.  See Order, 4/4/05.  Before

the Court now are the parties' competing calculations of damages.

For the following reasons, the Court grants plaintiffs most, but not

all, of the damages they seek.

The facts relevant to liability have been detailed in the Court's prior opinions and will not be repeated here. The following facts relevant to damages are undisputed. Under the terms of the contract entered into by Atari, Inc. ("Atari") and Games, Inc. ("Games") in January 2004 (the "Asset Purchase Agreement") and reaffirmed in their agreement dated March 31, 2004 (the "Settlement Agreement"), Games was obligated to: (1) make cash payments totaling $3.1 million; (2) transfer to Atari 10,250 shares of its Series AA Preferred Stock, redeemable at any time after March 29, 2004 for $1.025 million; (3) transfer to Atari 20,000 shares of the same stock series, valued at $2 million. See Asset Purchase Agreement, attached to Declaration of Paul G. Gardephe, 3/28/05 ("Gardephe Decl."), as Exhibit 1, ¶¶ 14-15. The Asset Purchase Agreement also called for Games to pay Atari $35,500 per month during the period in which Atari maintained the Games.com website for Games' benefit, which was to be January 12, 2004 through March 31, 2004. Id. ¶ 20.2. In the Settlement Agreement, the parties agreed that Games would pay $104,108 in cash in satisfaction of this provision. See Settlement Agreement, attached to Gardephe Decl. as Exhibit 7.

Under the Asset Purchase Agreement, these payments became immediately due and payable, "without set-off of any kind," upon Atari's termination of the contract, id. ¶ 32.1. Furthermore, co-defendant Chicago West Pullman LLC, a limited liability company controlled by co-defendant Roger W. Ach II, guaranteed defendant Games' obligations. Id. at A0018. In partial fulfillment of these

2

obligations, Games has made a $100,000 cash payment and has delivered all 30,250 shares to Atari.

While the Asset Purchase Agreement itself states Games' obligation to redeem the first set of 10,250 shares, Games' obligations as regards the redemption of the remaining 20,000 shares are created by the shares' certificate of designations, which is referenced in, and affixed to, the Asset Purchase Agreement. See id. at A0030-A0033. The certificate indicates that the 30,250 shares transferred to Atari constitutes the entire stock series, which was issued on December 29, 2003, apparently for the specific purpose of this deal. Id. at A0029-A0030. Consistent with the language of the contract, the certificate further states that any shareholder may, at any time after March 29, 2004, require redemption of up to 10,250 shares for $100 per share. Id. at A0032. In addition, a shareholder gains the right to redeem 10,000 more shares at the same price on the first anniversary of the stock's issuance, or December 29, 2004, and the right to redeem the final 10,000 shares on the issuance's second anniversary, or December 29, 2005. Id. at A0032.

From the aforementioned facts, certain conclusions follow:

First, it is evident from the above facts and the Court's earlier rulings that Games, as the breaching party, is contractually liable to Atari for $3,104,108 in cash (plus prejudgment interest at an annual rate of nine percent from the time of Games' breach on April 30, 2004, see N.Y. C.P.L.R. § 5004). This sum is based on the $3.1 million set forth in the Asset Purchase Agreement, minus the

$100,000 that Games already has paid, plus the $104,108 for website

management set forth in the Settlement Agreement.

Games protests that the contractual provision requiring it to

make these payments, without any set-off, despite the fact that its

breach has excused Atari from conveying any assets in exchange,

amounts to an unenforceable liquidated damages provision and an

unjustifiable windfall for Atari.  However, under New York law, which

here governs, a repudiating party must make all remaining payments

contemplated by the contract it has repudiated, even if, as a result

of its breach, the other party to the contract is excused from

performance in return.  See Am. List Corp., 75 N.Y.2d 38, 44 (1989).

Moreover, even if this were not true, defendants, while complaining

of Atari's alleged windfall, have failed to provide any evidence that

the assets in question have any value, mooting any further analysis

of the validity of the set-off bar.  Indeed, defendants have

elsewhere documented the disrepair into which the Games.com website

has fallen during the pendency of this lawsuit, see Declaration of

Carol Meinhardt, 4/7/05, ¶ 10.[1]  Moreover, according to defendants'

own undisputed submission, since March, when the uncertainty

regarding the assets' ownership was removed, Atari has struggled

---

[1]Atari's behavior during this period is entirely
understandable given the public uncertainty Games created about
the website's ownership.  While the Court declined to impose
sanctions on Games for its behavior, see Memorandum Order,
3/11/05, it will not find that Atari was obligated to invest
resources in maintaining or increasing the website's value during
this time.  Furthermore, it is unlikely that Atari could have
sold or licensed the website for full value without undisputed
title.

mightily to make the website workable, and it is doubtful whether

Atari will ever realize meaningful revenue from it.  Id. ¶¶ 11-12.

Second, because Atari promptly requested redemption of the

group of 10,250 shares redeemable after March 29, 2004, see Letter of

April 14, 2004, attached to Gardephe Decl. as Exhibit 8, Games must

immediately redeem these shares for $1.025 million, plus nine percent

annual interest from April 30, 2004.  In addition, since the December

29, 2004 anniversary of the shares' issuance has come and gone, Atari

is entitled to immediate redemption, for $1 million, of the next

group of 10,000 shares.[2]

Third, by the terms of the stock certificate, Atari cannot

redeem its final 10,000 shares until December 29, 2005.  Plaintiffs

argue that Atari should be able to redeem these shares immediately,

since Games breached the agreement and is immediately liable, under

the contract's acceleration clause, for all payments specified in the

contract.  However, this analysis is incorrect.  Games has already

made the relevant contractual payment, i.e., the stock transfer.  The

contract itself does not require redemption of stock, other than the

initial 10,250 shares.  It is the stock certificate that sets the

---

[2]While Atari has been entitled to such redemption for
several months, its first request for redemption of these shares
after December 29, 2004 was not made until March 24, 2005, and
even then it did not specifically request the redemption of these
shares, but rather demanded redemption of all outstanding shares,
including the 10,000 shares for which it has no such entitlement
yet.  See Letter of March 24, 2005, attached to Gardephe Decl. as
Exhibit 13.  Since Atari does not appear to have made a valid
request for redemption as to these shares, no pre-judgment
interest is imposed as to this payment.

schedule for the redemption of the remaining shares, and the breach of contract cannot accelerate that schedule.

Fourth, plaintiffs are not entitled to attorneys' fees. The Asset Purchase Agreement states, in relevant part, that Games "shall indemnify and hold harmless [plaintiffs] from and against any all claims, liabilities, demands, causes of action, judgments, settlements and expenses (including, but not limited to, reasonable attorneys' fees and court costs)" arising out of the use of the assets in question or Games' failure to perform its obligations under the contract. See Asset Purchase Agreement ¶ 26.2. This language, which plaintiffs argue entitles them to attorneys' fees in this case, is more reasonably read as an agreement that Games will indemnify Atari against suits brought by third parties, and the remainder of the paragraph solidifies this conclusion, for example by setting out circumstances under which Games may assume Atari's defense. If the parties had intended that the losing party pay the winner's attorneys' fees in a suit for breach of the contract, it would have been simple for them to draft a provision that said so clearly. The Court will not interpret this provision, which is at best ambiguous, as changing the usual rule that each party pays its own attorneys' fees. Plaintiffs are, however, entitled to other costs, see Fed. R. Civ. P. 54(d)(1), of which they have identified, and so will be awarded, only a $150 filing fee.

In sum, Atari is entitled to the following damages: (1) immediate payment of $3,104,108, plus interest at an annual rate of nine percent from April 30, 2004; (2) immediate redemption of the

6

initial 10,250 shares for $1.025 million, plus interest at an annual rate of nine percent from April 30, 2004; (3) immediate redemption of 10,000 additional shares for $1 million; (4) redemption of the remaining 10,000 shares at any time after December 29, 2005.  In addition, the plaintiffs collectively are entitled to recoup their $150 filing fee.  This judgment runs directly against Games, but in the event Games fails to satisfy it, it runs secondarily against Chicago West Pullman and Ach.  Finally, since plaintiffs have made no request for the preliminary injunction to become permanent, the preliminary injunction is hereby lifted.  Clerk to enter judgment.

     SO ORDERED.

_____

JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
       May 4, 2005