UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
ATARI, INC., ATARI INTERACTIVE, INC. :
and HASBRO, INC., :
: 04 Civ. 3723 (JSR)
        Plaintiffs, :
: MEMORANDUM ORDER
        -v- :
:
GAMES, INC., ROGER W. ACH II, and :
CHICAGO WEST PULLMAN LLC, :
:
        Defendants. :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

    By Memorandum Order dated March 11, 2005 (the "March 11 Order"), the Court granted plaintiffs' motion for summary judgment in their favor on their breach of contract claims. See Memorandum Order, 3/11/05. By Order dated April 4, 2005, the Court dismissed plaintiffs' remaining claims, with plaintiffs' consent. See Order, 4/4/05. By Memorandum Order dated May 4, 2005 (the "May 4 Order"), the Court granted plaintiffs various final relief, while lifting the preliminary injunction that had been entered at the beginning of this case. See May 4 Order. Both sides now move for reconsideration of this last order. For the reasons stated below, the Court grants plaintiffs' motion in part and denies defendants' motion in its entirety.

    First, in the March 11 Order, the Court determined that, by the terms of the contract breached by defendant Games, Inc. ("Games"), plaintiffs were entitled to an injunction barring Games from further use of the intellectual property that the contract had licensed to Games. See March 11 Order at 11. Specifically, the

contract states that, upon the contract's termination, should Games fail to "cease the sale and/or distribution of Licensed Products," plaintiff Atari, Inc. ("Atari") would be "entitled to injunctive relief." See License Agreement ¶ 32.2. Based on this provision and on a showing by plaintiffs of a high risk that defendants would infringe their copyrights and trademarks, the Court issued a preliminary injunction on June 10, 2004. See Order 6/10/04. However, in their subsequent briefing of the issues relating to final relief, plaintiffs did not mention permanent injunctive relief, and, accordingly, the Court, under the impression that plaintiffs were no longer seeking injunctive relief now that they had been awarded damages, lifted the preliminary injunction it had entered on June 10, 2004 without converting it into a final injunction. See May 4 Order at 7. Plaintiffs now represent, however, that they reasonably believed they were only asked to brief money damages in the papers submitted in connection with the May 4 Order and that they never knowingly abandoned their original request for a permanent injunction. The Court is persuaded that no abandonment has occurred and that, under the terms of the contract, plaintiff remains entitled to certain permanent injunctive relief.

However, the injunction to which plaintiff is now entitled is somewhat different from the one plaintiffs request, which tracks the language of the preliminary injunction and would bar all defendants from any display, use or publication of certain games and related trademarks. The preliminary injunction was partly based, as noted,

2

on plaintiffs' claims of trademark and copyright infringement, claims that plaintiffs have now voluntarily dismissed. Any permanent injunction, therefore, must fall within the injunctive relief authorized by the contract.

The contract does not explicitly set forth the scope of the injunction it authorizes, but it premises any such relief upon a showing that Games continued to sell and/or distribute products containing the intellectual property that Games licensed under the contract after Games' authority to do so was terminated. Therefore, the contract implicitly calls for an injunction restraining Games from the sale or distribution of products containing the relevant intellectual property. Accordingly, Games, Inc.[1] is hereby enjoined from selling or distributing any product that contains the intellectual property it licensed in its contract with Atari.

<u>Second</u>, plaintiffs ask that the $50,000 bond they posted on May 19, 2004 to secure a temporary restraining order in this case be exonerated. This request is granted.

<u>Third</u>, plaintiffs move to recover the $1,250 cost they incurred to obtain that bond. <u>See</u> Invoice, attached to May 13, 2005 letter of Paul G. Gardephe. Whether to award these costs to the prevailing party is within the Court's discretion, <u>see</u> Fed. R. Civ. P. 54(d)(1); <u>Copperweld Steel Co. v. Demag-Mannesmann-Bohler</u>, 624 F.2d 7, 9 (3d Cir. 1980). Plaintiffs should have listed this cost in

---

[1] Because the only parties to the contract were Games and Atari, the injunction cannot run against the other two defendants in this case.

3

their initial damages brief along with the $150 filing fee they claimed at that time. By failing to do so they have, as an equitable matter, waived this claim. Accordingly, the Court declines to award it.

Fourth, plaintiffs ask that the Court clarify that the 10,000 shares of Games stock that Atari may redeem after December 29, 2005 are redeemable for $1 million, i.e., at a price of $100 per share. The May 4 Order stated that the stock certificate provided Atari with the right to redeem its first 10,250 shares at $100 per share on March 29, 2004, the right to redeem its next 10,000 shares at the same price on December 29, 2004, and "the right to redeem the final 10,000 shares on the issuance's second anniversary, or December 29, 2005." See May 4 Order at 3. It did not explicitly state that the last set of shares would be redeemable at the same price. While reasonable confusion on this score seems doubtful, the Court, in an excess of caution, hereby modifies the Judgment to reflect the fact that the last 10,000 shares, like the two previous groups, are redeemable for $100 per share.

Fifth, defendants argue that the judgment should run against only Games (the party that breached the contract) and Chicago West Pullman LLC ("Chicago"), which guaranteed Games' contractual obligation, and not against Roger W. Ach II, who is both the chief executive officer of Games and Chicago's "managing member." See Deposition of Roger W. Ach II, 11/8/04 ("Ach Dep."), at 17. This issue of secondary liability is potentially important, because Games, against which the judgment runs primarily, seems unlikely to be able

4

to meet its remaining obligations to Atari.  <u>See</u> SEC Form 10-KSB, attached to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration as Exhibit 2, at 41 (as of June 30, 2004, Games had $3.7 million in liabilities and assets of $312,037).

 While ordinarily the owners and employees of a corporation are not liable for the corporation's wrongs, under New York law (here applicable) the corporate veil may be pierced and an individual held liable where the corporation is "so dominated by an individual... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego."  <u>Gartner v. Snyder</u>, 607 F.2d 582, 586 (2d Cir. 1979) (applying New York law).  Indicia of such domination include, <u>inter</u> <u>alia</u>, the absence of such formalities of corporate existence as stock issuance, the election of boards of directors, and the keeping of corporate records; the amount of business discretion displayed by the corporation; and whether the corporation's assets are used by the dominator as if they were his own.  <u>Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.</u>, 933 F.2d 131, 139 (2d Cir. 1991). The purpose of disregarding the corporate form in this way is to prevent fraud or otherwise achieve equity.  <u>Gartner</u>, 607 F.2d at 586.

 Chicago is a limited liability company that is owned "primarily" by Ach and his wife and children, although Ach has been unable or unwilling to document the exact ownership shares.  Ach Dep. at 13, 16.  Carol Meinhardt, Ach's long-time employee at various enterprises and now with Games, purportedly holds a five-percent

5

interest that was given to her by Ach; she did not invest her own capital to gain this interest. Deposition of Carol A. Meinhardt, 11/9/04, at 23, 26-27. Meinhardt does not know whether any writing formalizes this ownership interest, and she is similarly unsure as to whether she could sell this interest without Ach's permission. Id. at 83-84.

As Ach acknowledged, Chicago's purpose is to provide "a structure in which I can manage -- through which I can manage invested capital," id. at 14, and the company has no investment focus to channel its activities beyond Ach's whims. Id. at 15. Although Chicago is styled as a limited liability company, Ach could not recall whether it had any sort of governing agreement. Id. at 16. Ach is Chicago's sole "managing member," id. at 17, and the company has no officers or board of directors. Id. at 18. While Ach contended he could not remember whether he held a majority interest in Chicago, he conceded that, if he was not, "the other holders do not wish to exercise their control," id. at 19, meaning that for all intents and purposes Chicago is under his complete domination.

The Court concludes that Chicago is Ach's alter ego for all purposes here relevant and has no independent corporate existence worth protecting. Furthermore, the Court finds, based on defendants' behavior in this matter, that there is a realistic risk of its being used now simply as a device to defraud creditors. Accordingly, the Court declines to modify that part of the Judgment that finds Ach as well as Chicago secondarily liable. See Wm. Passalacqua, 933 F.2d at 139

For the foregoing reasons, the Court hereby amends the Judgment to add that: (1) defendant Games, Inc. is enjoined from selling or distributing any product that contains the intellectual property it licensed in its contract with Atari, Inc; (2) the $50,000 bond that plaintiffs posted on May 19, 2004 to secure a temporary restraining order in this case is exonerated; and (3) the final 10,000 shares of Games stock that Atari may redeem after December 29, 2005 are redeemable at a price of $100 per share, for a total of $1 million. Plaintiffs' and defendants' motions for reconsideration are in all other respects denied. Clerk to enter Amended Judgment.

SO ORDERED.

                                         _____
                                         JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       May 27, 2005

7